UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


RICHARD MOLINA,                )
                               )
            Petitioner,         )    CIVIL ACTION NO.
                               )    09-12190-DPW
v.                             )
                               )
GARY RODEN, Superintendent      )
MCI Norfolk,                   )
                               )
            Respondent.         )
                               )


                       MEMORANDUM AND ORDER
                          May 21, 2012

    After unsuccessfully appealing his first degree murder conviction in Massachusetts state courts, petitioner Richard Molina now seeks a federal writ of habeas corpus. As grounds for federal relief, Molina argues that: (A) the Commonwealth failed to disclose *Brady* material until the fourth day of trial; (B) he was denied his right to a fair trial because a witness for the prosecution invoked his privilege against self-incrimination, was coerced by the trial court, and lacked any indicia of reliability; © he was denied due process because the Commonwealth failed to turn over a police report; (D) the trial court erroneously allowed a witness to give an expert opinion regarding one of the murder weapons; and (E) the Supreme Judicial Court failed to grant relief under Mass. Gen. L. ch. 278 § 33E. Concluding that Molina is not entitled to relief in this court, I will deny his petition.

## I. BACKGROUND

A. Facts

When federal courts examine a petitioner's claims on habeas review, state court factual determinations are presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Here, Molina does not dispute the facts, so I recount them as the Massachusetts Supreme Judicial Court did. And as that court did, I will reserve some facts for discussion in connection with Molina's individual claims of error.

> Despite the defendant's assertion to the contrary, the defendant and the victim knew each other. The exact nature of the relationship between the defendant and the victim was not clear, but the jury were warranted in concluding it concerned money or drugs or both. The victim had been to the defendant's home at least once. Moreover, around the time of the murder, a telephone call was placed from the apartment where the defendant resided in Lawrence to the victim's residence.[1]
> On October 19, 1998, while the victim was driving back from a trip to New York in a Dodge Caravan van he had rented, he made two telephone calls to the defendant's cellular telephone at 7:13 p.m. The victim telephoned the defendant's number again that evening at 10:06 and 10:59 p.m.; the latter call lasted up to three minutes.
> Sometime after 11:30 p.m. on October 19, the victim, who still was driving the rental van, met with the defendant and another individual, Anibal

---

[1] Footnote 1 of the SJC opinion stated: "On October 21, 1998, during the course of the murder investigation, a State trooper noticed what turned out to be the telephone number of the defendant's residence on the telephone caller identification box at the victim's residence."

2

Rodriquez.[2]  The defendant and Rodriquez murdered the victim in Lawrence, near the back of a grocery store parking lot sometime between the hours of 11:30 p.m. on October 19 and 12:30 a.m. on October 20.

Rodriquez drove the van, which had the victim's body in the back seat, to Methuen and abandoned it near a farm.  He went to the home of a woman who lived approximately one-half mile from the farm and asked her for a ride to Lawrence.  She did not know Rodriquez and noticed that he was distraught.  Ultimately, she telephoned for a taxicab, which picked up Rodriquez in Methuen and dropped him off near the defendant's residence in Lawrence.  The taxicab driver noticed that Rodriquez was nervous, that he had blood on his hand and a mark on his neck, and that there was blood on the fifty dollar bill Rodriquez used to pay the fare.

When police examined the van on the afternoon of October 20, they saw the victim's body, as well as a large amount of blood in the front and back seats.  The medical examiner testified that the victim had been stabbed multiple times, including five times in the chest and once in the abdomen, any one of which could have been fatal.  He also was strangled with a cord or rope, which also could have been fatal.  There was a blunt force injury to the victim's head, and he had been run over by the van.  The victim was alive during at least part of the strangulation.  He had trauma to his mouth and jaw line consistent with resisting the strangulation, as well as defensive knife wounds on his arms.  The medical examiner testified that the victim died of multiple stab wounds.  Moreover, the stab and strangulation wounds were consistent with, respectively, a knife blade and electrical cord that were found, with blood on them, during the police investigation of the murder site in Lawrence.  The blood on the knife blade matched the victim's.

A bloody fingerprint from a right middle finger that was found on a knife handle located in the van, and a bloody partial right palm print that was found on the air bag area of the van's steering wheel, belonged to the defendant.  The defendant left his prints

---

[2]  Footnote 2 of the SJC opinion stated: "In a separate trial, Anibal Rodriquez was convicted of murder in the first degree of the victim by reason of felony-murder. His conviction was affirmed by this court. *See Commonwealth v. Rodriquez*, 454 Mass. 215, 216, 908 N.E.2d 734 (2009)."

because he had the victim's blood on his hand, and a test of the defendant's hands on October 26 showed the presence of blood on the defendant's right palm. Rodriquez's bloody fingerprint was found on the van's exterior driver's side mirror. Moreover, the knife handle found in the van matched the knife blade that was found in Lawrence.

In addition to the physical evidence, a witness, Miguel Valentin, testified that, two or three days before the murder, the defendant approached him and asked whether he wanted to make "three and a half," which the witness assumed meant three and one half grams of drugs or a sum of money. Valentin stated that the defendant related a plan to meet with a "guy." The defendant would sit in the front passenger seat of this man's vehicle, the defendant's girl friend would sit in the rear passenger seat, and Valentin would sit behind the driver. The defendant wanted Valentin to put a wire around the driver's neck. Valentin refused the defendant's request. When Valentin learned about the murder, he went to a State trooper, for whom he had been a confidential informant for approximately ten years, and related the story.

At trial, the Commonwealth prosecuted the defendant for murder in the first degree on the theories of deliberate premeditation and extreme atrocity or cruelty both as a principal and a joint venturer. In rendering their verdict of murder in the first degree based on extreme atrocity or cruelty, the jury were not required to indicate whether they believed the defendant to be the principal or joint venturer.

The defendant called no witnesses at trial. In essence, the defense was that there was no evidence that the defendant was present in the van during the murder. In closing argument, defense counsel conceded that the defendant was associated with the van and the knife handle but argued that the experts could not say when the defendant was in the van, and whose blood was on the knife handle. Defense counsel also attacked the credibility of Valentin, pointing out that he was a drug user and seller, and earned money as a confidential police informant. Counsel detailed inconsistencies in Valentin's trial testimony, including that he had changed his testimony from one day to the next.

*Commonwealth v. Molina*, 909 N.E.2d 19, 21-23 (Mass. 2009).

4

The jury found Molina guilty of first degree murder by reason of extreme atrocity or cruelty. He was later sentenced to life imprisonment.

B.  Post-Trial Proceedings

Molina timely appealed, and the Supreme Judicial Court affirmed his conviction on July 10, 2009. *Id.* at 29. Having exhausted all available state remedies, Molina timely filed this petition on December 14, 2009.

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, a federal court may grant a state prisoner habeas relief if the state court's decision on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The Supreme Court has held that "clearly established federal law" only "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court

5

has on a set of materially indistinguishable facts." *Id.* at 413.

An "unreasonable application of" clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the . . . prisoner's case." *Id.* at 407. An application of clearly established federal law is unreasonable under this standard only if it is "objectively unreasonable," not merely if it is incorrect. *Id.* at 409; *see also Grant v. Warden, Me. State Prison*, 616 F.3d 72, 76 (1st Cir. 2010) ("Under this deferential standard, the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." (citation and internal quotation marks omitted)). Finally, the First Circuit has interpreted the "unreasonable application" standard to mean that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *L'Abbe v. DiPaolo*, 311 F.3d 93, 98 (1st Cir. 2002) (citation and quotation marks omitted).

Courts look to the last reasoned state court decision in determining a petitioner's eligibility for federal habeas relief. *Malone v. Clarke*, 536 F.3d 54, 63 (1st Cir. 2008) (citation omitted). In this case, the last reasoned decision was that of the Massachusetts Supreme Judicial Court.

### III. DISCUSSION

A. *Brady* Evidence

Molina's first claim is that the prosecution failed to disclose *Brady* evidence until the fourth day of trial, thus violating his due process rights. The alleged *Brady* evidence was that the prosecution witness, Valentin, was a government informant. The Supreme Judicial Court described the facts giving rise to Molina's first claim in its opinion:

> In his requests for discovery from the Commonwealth prior to trial, the defendant asked for evidence of "promises, rewards, or inducements." On the morning of the fourth day of trial, the Commonwealth informed the defense that Valentin had been providing information unrelated to this case to the State police drug unit both before and after the murder.[3] Defense counsel moved for a mistrial, arguing that this undisclosed, exculpatory information affected trial preparation, misled the grand jury, and went to the heart of the defense.
> The judge found that the defendant had not shown prejudice. However, the judge allowed defense counsel to interview Valentin's State police contact, which he did through an investigator. The judge also allowed defense counsel to interview Valentin and, when Valentin ultimately refused to speak to defense counsel, the judge held a voir dire so that Valentin could be cross-examined concerning his past and present relationship with State police officials. After the voir dire of Valentin, the judge found that the interview and voir dire provided the defense with more than it otherwise would have had and that defense counsel would be able to "mount an effective cross-examination" of Valentin.

---

[3] Footnote 3 of the SJC opinion stated: "It is not clear in the record the exact date on which the prosecutor learned about this relationship, but the judge found some culpability on the part of the Commonwealth."

7

*Molina*, 909 N.E.2d at 23.

The Respondent argues that no clearly established Supreme Court precedent has applied *Brady* to cases of delayed disclosure, and therefore Molina's first claim fails. However, the First Circuit has rejected this position in the habeas context. *Lopez v. Massachusetts*, 480 F.3d 591, 595 (1st Cir. 2007) (rejecting "[t]he Commonwealth's blanket position limiting *Brady* to complete non-disclosure"). Nevertheless, Molina's argument fails because the Supreme Judicial Court reasonably found that he cannot show prejudice from the delay, that is, he cannot show "either a likelihood of a different result or circumstances that otherwise shake a court's confidence in the result of the trial." *Id.*

Molina's counsel was allowed to interview both Valentin and his State police contact. When Valentin refused to speak to Molina's counsel, the trial judge held a voir dire so that Valentin could be cross-examined concerning his past and present relationship as a government informant. After the voir dire of Valentin, the trial judge found, and the Supreme Judicial Court agreed, that the interview and voir dire provided Molina with more than he otherwise would have had and that Valentin could be effectively cross-examined as a result. Furthermore, Valentin was not cross-examined until day seven of the trial, which gave defense counsel two days to prepare.

Moreover, the information that Valentin was an informant was only marginally more damning than the other avenues of impeachment Molina already had available to him. Counsel elicited testimony from Valentin that he often would "say whatever [was] convenient to [his] purpose," that he had numerous drug-related convictions, and that his mind could be "frazzled" from his drug use. Counsel also exposed inconsistencies in Valentin's testimony. Thus, the knowledge that Valentin had been a police informant did little to diminish his credibility further.

Finally, as the Supreme Judicial Court noted, substantial evidence linked Molina to the van, and a jury could have convicted Molina even without Valentin's testimony. Molina left a bloody fingerprint on a knife handle located in the van, and a bloody partial right palm print on the air bag area of the van's steering wheel. Molina left these prints because he had the victim's blood on his hand, and a test of his hands upon arrest showed the presence of blood. Circumstantial evidence, in the form of phonecalls made by the victim to Molina's phone, also linked Molina to the crime.

Molina had sufficient opportunity to cross-examine Valentin effectively after the delayed disclosure of *Brady* evidence. His counsel forcefully impeached Valentin's credibility. Sufficient evidence linked Molina to the crime even without Valentin's

9

testimony. For all of these reasons, the Supreme Judicial Court was reasonable in finding that Molina was not prejudiced. Thus, Molina cannot show that the Supreme Judicial Court's decision was contrary to or an unreasonable application of existing Supreme Court precedent, and his habeas petition on this claim fails.

B. <u>Issues Involving Valentin's Testimony</u>

Molina next argues that his constitutional right to a fair trial was violated because Valentin's testimony should have been excluded entirely. The Supreme Judicial Court described the facts giving rise to this claim:

> The judge held a voir dire of Valentin twice. As discussed, the first voir dire was conducted to remedy the Commonwealth's late disclosure of Valentin's relationship with State police. Thus, defense counsel had the opportunity to cross-examine Valentin about that relationship before Valentin testified. A second voir dire was held to determine whether to allow the prosecutor to treat him as a hostile witness because, during his trial testimony, Valentin stated that he did not want to testify, and denied that the defendant said anything to him except whether he wanted to make "three and a half."
> . . .
> At the end of the second voir dire, because Valentin was being untruthful when he denied testifying before the grand jury in this case, the judge instructed him about the penalty for perjury in a capital case. The judge told Valentin that he could refuse to answer a question if he asserted a Fifth Amendment privilege, but he could not refuse simply to answer a question, even if he was fearful. The judge then stated, "Unless you exercise your right against self-incrimination, you must answer each question put to you truthfully. You may not lie in giving an answer." He concluded by

> telling Valentin that the penalty for perjury was life
> in prison.[4]
>
> . . .
>
> At the second voir dire, it was undisputed that
> Valentin lied when he denied testifying before the
> grand jury. The judge told counsel that he believed he
> needed to give the instruction not because Valentin
> lied but because of the integrity of the trial, where
> Valentin "may already have . . . [been] untruthful"
> regarding his grand jury testimony. Although he had
> discussed the reason for the perjury instruction with
> counsel, Valentin was not present and thus did not know
> the reason he was receiving the instruction.

*Molina*, 909 N.E.2d at 25-26.

Molina asserts three reasons why Valentin's testimony should have been excluded by the trial judge, and thus three grounds for habeas relief: (1) Valentin invoked his Fifth Amendment privilege against self-incrimination; (2) Valentin was coerced by the trial judge into testifying by being admonished to testify truthfully; and (3) Valentin's testimony lacked any indicia of reliability.

Molina's first ground fails, because, as the Supreme Judicial Court recognized, only Valentin has standing to assert a Fifth Amendment challenge. *See, e.g.*, *Goldstein v. United States*, 316 U.S. 114, 121 n.11 (1942) ("The privilege against self-incrimination afforded by the Fifth Amendment is personal to the witness."). Even if Molina did have standing, his claim would fail because he has provided no clear and convincing

---

[4] Footnote 7, located here in the Supreme Judicial Court's opinion, stated: "The judge gave Valentin a similar instruction at the conclusion of the first voir dire. At that time, he did not mention perjury."

evidence to overcome the Supreme Judicial Court's factual finding that Valentin did not decline to answer questions on self-incrimination grounds. *Molina*, 909 N.E.2d at 25.

Molina's second and third grounds address evidentiary matters at trial---quintessential matters of state law. Thus, Molina's second and third grounds fail unless the state court errors on matters of state law rise to the level of due process violations. *Coningford v. Rhode Island*, 640 F.3d 478, 484 (1st Cir. 2011). "But to trigger such relief, the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" *Id.* (citations omitted).

Here, the state court decision was not so arbitrary and capricious as to provide Molina the relief he seeks. As to the instruction to tell the truth, the Supreme Judicial Court properly noted that "[a] judge may remind a witness of the duty to tell the truth." *Molina*, 909 N.E.2d at 26 (citing *Commonwealth v. Britto*, 433 Mass. 596, 612 (2001)). Thus, the judge's instruction was not erroneous, yet alone so erroneous as to rise to constitutional dimension.

As to Molina's claim of error for failing to exclude Valentin's testimony on the ground that it lacked indicia of reliability, questions of credibility are, of course, "ordinarily a matter for the jury." *United States v. Seeley*, 892 F.2d 1, 3

(1st Cir. 1989). The decision to allow a jury to weigh Valentin's credibility in the face of the substantial impeachment on cross-examination noted above was not erroneous.

Thus, the Supreme Judicial Court's decision that Molina's second claim fails was not contrary to or an unreasonable application of Supreme Court precedent. Molina therefore cannot obtain habeas relief on the basis of this claim.

C. <u>Late Disclosure of Annotated Police Report</u>

Third, Molina contends that he was denied his right to a fair trial and to counsel[5] because prosecutors failed to turn over an annotation on a police report which identified which fingerprints found at the crime scene were in blood. The Supreme Judicial Court described the facts giving rise to Molina's third claim in its opinion:

---

[5] On direct appeal, Molina attempted to recharacterize his claim as one for denial of his right to counsel. This was rejected by the Supreme Judicial Court, which decided that "[a]lthough the defendant has recast this issue as an attempt to interfere with counsel, the claim is one of a late disclosure of evidence that requires the defendant to show prejudice." *Molina*, 909 N.E.2d at 27. To the extent that Molina relies on his right to counsel claim in his habeas petition, it fails because he procedurally defaulted that claim by not raising it at every level of appeal. 28 U.S.C. § 2254(b); *see also Cone v. Bell*, 556 U.S. 449, 465 (2009) (noting that "consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review" (citation omitted)).

A State trooper who had tested the van for fingerprints
testified that over ninety latent prints were found
inside and outside of the van, sixteen of which were
identified as belonging to the victim, the defendant,
Rodriquez, and another individual who had accompanied
the victim on his trip to New York. He stated that, of
the sixteen prints, only three were in blood: the
defendant's prints on the knife handle and steering
wheel, and Rodriquez's print on the outside mirror
casing. He also testified that there were two other
prints on the knife handle, but that they were
unidentifiable and that the defendant could not be
ruled out as their source. Although the trooper had
provided the defense with a copy of a log of his
findings regarding the prints at the scene, unbeknownst
to the defense, the trooper amended his log with
handwritten notations indicating which prints were in
blood and which were not. The Commonwealth had a copy
of the amended log. However, because defense counsel
was relying on the first log, on recross-examination,
he pressed the trooper regarding how the trooper knew
which prints were in blood. The trooper testified that
he had it written in his amended log. Defense counsel
moved for a mistrial, arguing that he conducted his
cross-examination based on the wrong document and it
made him "look like a fool in front of the jury."
Although the judge agreed that if defense counsel had
had the proper document, he would not have pressed the
point on his recross-examination, the judge denied the
oral motion for a mistrial. He further stated that
defense counsel had not been misled by the Commonwealth
into thinking that all prints were in blood. The judge
concluded that it could be remedied by cross-examining
the trooper concerning his failure to give his amended
log to the defense.

    In his recross-examination of the trooper, defense
counsel elicited that the trooper knew that he had an
obligation to provide a copy of the amended log to the
defense and knew that it was against the rules to
testify without giving the defense a copy. Defense
counsel moved again for a mistrial. The judge
reiterated that the defense has not been misled by the
Commonwealth. The judge denied the motion, concluding
that the defendant's claim of prejudice was
speculative, and that the Commonwealth likewise had
been embarrassed.

*Molina*, 909 N.E.2d at 27.

14

Molina's memorandum in support of his petition only addresses his procedurally defaulted claim of a violation of his right to counsel. However, even if properly briefed, his claim that his due process right to a fair trial was violated would also fail. Such a claim would, as the Supreme Judicial Court recognized, be one for late discovery and disclosure of evidence which requires a showing of prejudice. *See Molina*, 909 N.E.2d at 27 ("Although the defendant has recast this issue as an attempt to interfere with counsel, the claim is one of a late disclosure of evidence that requires the defendant to show prejudice."). A defendant has been prejudiced by a delayed disclosure if he can show that his counsel "was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case." *United States v. Ingraldi*, 793 F.2d 408, 411-12 (1st Cir. 1986).

Here, the Supreme Judicial Court reasonably decided that Molina was not prejudiced by the delay. Molina's counsel was afforded an opportunity to cross-examine the State trooper. During that cross-examination, the trooper was pointedly questioned about his failure to produce a copy of the amended log that he relied upon in his testimony to the defense, and reminded that it was against the rules to testify without giving the defense a copy of the log he was relying on. This, the trial judge thought (and the Supreme Judicial Court agreed), resulted

in an equal and offsetting embarrassment to the Commonwealth which remedied any possible harm to the defendant's case.

The judgment of the Supreme Judicial Court that Molina was not prejudiced was a reasonable one. Therefore, its opinion as to Molina's third claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Consequently, Molina's habeas petition fails as to this claim as well.

D.  <u>Opinion Regarding Murder Weapon</u>

Molina's fourth challenge to the Supreme Judicial Court's decision is that the trial judge improperly allowed a lay witness to give expert testimony, in violation of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Supreme Judicial Court described the facts giving rise to Molina's fourth claim in its opinion:

> A forensic scientist who worked in the State police crime laboratory examined the knife handle (found in the van) and the knife blade (found at the murder scene) to establish whether there was a physical link between the two items. After defense counsel objected to the witness giving his opinion about whether the two pieces matched, the judge held a voir dire. The judge then ruled that the witness could testify concerning what he did in putting the two items physically together, but could not give his opinion that they matched because the jury were capable of drawing their own conclusion.
> The part of the witness's subsequent testimony, to which the defense counsel objected, occurred when, in reference to a photograph of the knife handle and blade, the witness stated, "[A]s a result of closely matching these two broken areas [between the knife handle and the knife blade] I was able to form what I

16

> would describe as a direct mechanical match; it's
> simply like putting two pieces of a jigsaw puzzle
> together. A perfect fit existed." In response to an
> objection, the judge asked the witness whether by
> "mechanical match" he meant that "a jutting out spot
> connected to an indented spot [on the two pieces of the
> knife]." After the witness responded affirmatively,
> the judge instructed the jury that "the witness is not
> opining, and would not be allowed to opine . . .
> whether or not this blade, in fact, came from this
> handle. That would be for you to determine, based upon
> the evidence. But, he is saying, as indicating, a
> jutting out spot on one matches an indentation spot on
> another."
>       The defendant argues that this was an expert
> opinion and it was prejudicial error to allow it in
> evidence because the jury could determine for
> themselves whether there was a match.

*Molina*, 909 N.E.2d at 28.

Molina's challenge fails. As the First Circuit has repeatedly noted, "[h]abeas review does not ordinarily extend to state court rulings on the admissibility of evidence," because such rulings are the province of state, not federal, law. *Puleio v. Vose*, 830 F.2d 1197, 1204 (1st Cir. 1987). The only exception to this rule is where the state court ruling is so egregious as to violate due process. *Coningford*, 640 F.3d at 484 ("To be sure, a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief. But to trigger such relief, the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" (citations omitted)). In his petition, Molina does not allege that the state's evidentiary ruling was arbitrary or

17

capricious, or otherwise violated due process. Nor would the record bear out such a claim. Therefore, his fourth claim fails because it involves state evidentiary rulings not rising to a due process violation and accordingly is not proper subject matter for federal habeas review.

E.  Mass. Gen. L. ch. 278 § 33E

Finally, Molina contends that the Supreme Judicial Court erred in not reducing his first degree murder verdict under Massachusetts General Laws chapter 278, section 33E. Under section 33E, the Supreme Judicial Court has the discretionary power to "(a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt" if the interests of justice so require. Mass. Gen. L. ch. 278 § 33E.

Of course, the Supreme Judicial Court's refusal to exercise its discretion under this provision is an issue of state, not federal, law. *See LeBeau v. Roden*, 806 F. Supp. 2d 384, 404 (D. Mass. 2011) ("LeBeau's challenge to the SJC's refusal to exercise its discretion, pursuant to Mass. Gen. Laws ch. 278, § 33E, to reduce LeBeau's first-degree murder verdict raises only an issue of state law."). Because "federal habeas corpus relief does not lie for errors of state law," any alleged error by the Supreme Judicial Court in the application of Mass. Gen. L. ch. 278, § 33E cannot give rise to a federal petition for a writ of habeas

corpus. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, Molina's final ground for habeas relief fails.

## IV. CONCLUSION

For the reasons set forth above, I DENY Molina's petition for a writ of habeas corpus.


**/s/ Douglas P. Woodlock**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT